# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JEFFREY A. DICKERSON

    Plaintiff,

vs.

WELLS FARGO BANK, N.A. et al.,

    Defendants.

3:16-cv-00375-RCJ-VPC

**ORDER**

This case arises out of a residential foreclosure. Pending before the Court is a motion for summary judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Jeffrey Dickerson, an attorney proceeding *in pro se*, owns real property at 60 Gazelle, Reno, NV, 89511 ("the Property"). (Am. Compl. ¶ 1, ECF No. 38). He has not made a mortgage payment on the Property in five years. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is the servicer of a mortgage on the Property. (*Id.* ¶ 3). Wells Fargo caused a foreclosure sale of the Property to be scheduled for January 18, 2017. (*Id.* ¶ 7). Plaintiff sued Defendants in state court for "breach of contract, fraud and defective foreclosure: dual tracking," alleging Defendants had breached a stipulation to dismiss Plaintiff's petition for judicial review from the Nevada Foreclosure Mediation Program by failing to consider Plaintiff's application for a loan

modification. Plaintiff alleged in the alternative that Defendants had fraudulently misrepresented their authority to consider a loan modification. Defendants removed.

Plaintiff moved to remand based on lack of complete diversity, and Defendants moved to dismiss. The Court denied the motion to remand and dismissed all claims except the claim for breach of contract, with leave to amend. Plaintiff filed the Amended Complaint ("AC"), expanding the allegations but omitting all Defendants except Wells Fargo. Wells Fargo moved to dismiss the AC in part. The Court granted the motion in part, dismissing the fraud claim without leave to amend but refusing to dismiss the claim for "dual tracking" under Nevada Revised Statutes section ("NRS") 107.530(2) insofar as Plaintiff sought damages, although injunctive relief thereunder was no longer available.

The Court granted Plaintiff's request to file a First Supplemental Complaint ("FSC"). The FSC adds Wilmington Trust Co. ("WTC") as a Defendant and lists claims for breach of contract and "dual tracking" under NRS 107.530(2). Plaintiff alleges in the FSC that after the AC was filed, Wells Fargo promised in writing to vacate the January 18, 2017 foreclosure sale of the Property but conducted the sale, anyway. WTC is alleged to be the trustee of the deed of trust. Plaintiff does not allege he gave any consideration in return but only that he detrimentally relied on Wells Fargo's representations. The FSC therefore appears to rely on a theory of promissory estoppel as opposed to breach of contract. *See Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 & n.2 (1969) (citing Restatement of Contracts § 90 (1932)); Restatement (Second) of Contracts § 90 (1981). A settlement conference was unsuccessful. The Clerk has entered default against WTC. Wells Fargo has moved for summary judgment.

///

///

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even if the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III. ANALYSIS

### A. Breach of Contract

The Court has already ruled that the state court order dismissing the petition for judicial review did not purport to create (nor could have created) any duty for Wells Fargo to modify the loan:

> The copy of the dismissal order attached to the present motion does not tend to show that Wells Fargo made such an agreement, however. The parties stipulated

> that the petition for judicial review was untimely. Accordingly, the state district court had no jurisdiction to do anything but dismiss for lack of subject matter jurisdiction, without ruling on the merits, because the 30-day limitation period for judicial review of foreclosure mediation proceedings (like limitation periods for judicial review of administrative decisions in Nevada generally) is jurisdictional. *See Nationstar Mortg. v. Rodriguez*, 375 P.3d 1027, 1028–30 (Nev. 2016) (citing *Washoe Cnty. v. Otto*, 282 P.3d 719, 725 (Nev. 2012)). And even if the state district court had had jurisdiction, the dismissal order does not purport to require Wells Fargo to consider any application. It notes that the foreclosure could proceed and requires Plaintiff to use his best efforts to apply for a loan modification without commenting on Wells Fargo's alleged duty to consider it. It remains possible, of course, that Wells Fargo made such a promise via some other communication. But the only promise Plaintiff alleges is via the stipulation in the dismissal order, (*see* Am. Compl. ¶ 9–10), which contains no promise by Wells Fargo to consider a loan modification and as to which the state district court had no jurisdiction to impose conditions of dismissal even if it had so intended. The Court therefore dismisses this claim, this time without leave to amend.

(Order 5–6, Apr. 13, 2017, ECF No. 49 (footnote omitted)). Wells Fargo therefore need not argue against the claim of breach in the AC, which has been dismissed.

Plaintiff's only allegations of any promise by Wells Fargo in the FSC is the recitation that Wells Fargo "agreed in open court and in a subsequent written confirmatory stipulation, to consider a submission by Plaintiff of a new application for a loan modification." (First Suppl. Compl. ¶ 9, ECF No. 68). Plaintiff alleges that the state court "approved" the stipulation, *see id.* ¶ 10), but that appears to refer to the state court dismissal order, which, as the Court has noted, was powerless to do anything but dismiss and did not purport to obligate Wells Fargo to do anything, in any case. Plaintiff has adduced a transcript of the state court proceeding where counsel for Wells Fargo orally agreed to stay foreclosure for 30 days, until March 11, 2016, for Plaintiff to submit an application for a loan modification. (*See* Tr. 5–7, ECF No. 83, at 17). But there is no evidence Wells Fargo did not keep that promise.

Plaintiff has adduced evidence that he submitted an application for modification to his attorney on February 19, 2016. (Dickerson Dep. 44–46, ECF No. 83, at 26). An unidentified employee of Plaintiff's attorney telephoned Plaintiff on an unspecified date in early March 2016

to confirm the application had been sent to Wells Fargo on February 21, 2016. (*See id.* 46–47). Plaintiff received correspondence from Wells Fargo regarding the application in April 2016. (*See id.* 47). A notice of trustee's sale was taped to his door in May 2016. (*Id.*). Opposing counsel showed Plaintiff a letter addressed to him at the Property in March 2016 indicating that Wells Fargo hadn't received the required documentation and would not offer a modification. (*Id.* 57–59). Plaintiff claimed he hadn't received that letter, although he did not indicate ever having other problems with the mail at the address and in fact received other communications from Wells Fargo during the same time period, including the April 2016 correspondence. (*See id.* 58). At one point, Plaintiff stated, "I got three dogs. Maybe one of the dogs ate it." (*Id.* 60). Wells Fargo has adduced testimony that the letter was sent. (Smith Dep., ECF No. 84-8). The ultimate question, however, is not whether Plaintiff received any particular letter, but whether Wells Fargo offered a modification application in good faith as promised. Plaintiff has failed to adduce any evidence indicating that Wells Fargo did not consider the modification application in good faith. He has not, for example, adduced a copy of the application materials indicating that he in fact submitted a complete application.

**B.  Dual Tracking Under NRS 107.530(2)**

As Wells Fargo notes, this claim also fails because there is no evidence Wells Fargo ever proceeded with foreclosure activities while also considering Plaintiff for a modification. The evidence shows a notice of default in March 2013, a foreclosure mediation conference in September 2013 with a certificate issued in December 2013, a petition for judicial review pending until dismissal in March 2016, letters from America's Servicing Company indicating general information about foreclosure prevention alternatives dated March 25 and April 4, 2016, a notice of sale recorded in May of 2016, and a trustee's deed upon sale dated February 2017. There is no evidence of any foreclosure activity from the notice of default in March 2013 until

the notice of sale in May 2016. Foreclosure alternatives were being considered only between September 2013 and March 2016.

### C. WTC

WTC remains as a defaulted Defendant, but the Court will dismiss against WTC, as well. Unlike Wells Fargo, it is not alleged to be a mortgage servicer, so it is not subject to NRS 107.530(2), and, unlike Wells Fargo, it is not alleged to have made any promise to offer a loan modification. Because the allegations against WTC are insufficient, a default judgment cannot issue against it, and there is good cause to set aside the default. *See* Fed. R. Civ. P. 55(c).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 80) is GRANTED.

IT IS FURTHER ORDERED that the default against Wilmington Trust Co. is SET ASIDE, and Wilmington Trust Co. is DISMISSED as a Defendant.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case

IT IS SO ORDERED.

Dated February 14, 2018.

_____
ROBERT C. JONES
United States District Judge